# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| THOMAS ALTOMARE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL CARIBBEAN CRUISES LTD., RICHARD FAIN, JASON LIBERTY, and MICHAEL BAYLEY,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**Jury Trial Demanded** |

Plaintiff Thomas Altomare ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of press releases and other public statements issued by and regarding Royal Caribbean Cruises Ltd. ("Royal Caribbean" or the "Company") and media and analyst reports about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons and entities other than Defendants (as defined herein) that purchased or otherwise acquired Royal Caribbean securities from February 4, 2020, through March 17, 2020, both dates inclusive (the "Class Period"), who were damaged thereby (the "Class"), seeking to pursue remedies under Sections 10(b) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act"), and United States ("U.S.") Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

2.      Royal Caribbean is the world's second largest cruise company.  The Company controls and operates four global cruise brands: Royal Caribbean International, Celebrity Cruises, Azamara, and Silversea Cruises.  Together, all of the Company's brands operate a combined sixty-one cruise ships, visiting over 1,000 destinations across all seven continents.  Based on 2019 results, Royal Caribbean generated 58%, 18%, and 14% of its revenues from customer bookings originating in North America, Europe, and Asia/Pacific, respectively.

3.      The outbreak of infectious diseases is a major threat to the cruise industry.  In 2010, the World Health Organization ("WHO") identified norovirus and influenza outbreaks as "the major public health challenges for the cruise industry."  It was widely known, and reported by the Centers for Disease Control and Prevention ("CDC"), that cruise ships are often settings for outbreaks of infectious diseases because of their closed environment and contact between travelers from many countries.  Because an estimated 30 million passengers are transported on 272 cruise ships worldwide each year, the outbreak of disease on cruise ships poses a major risk to Royal Caribbean's financial results as well as the Company's customer bookings for future voyages.

4.      In December 2019, the first case of the novel coronavirus strain ("COVID-19") was reported in China.  On January 20, 2020, the WHO and media outlets reported that confirmed cases of COVID-19 were discovered outside of mainland China—in Japan, South Korea, and Thailand.  On January 21, 2020, the first case was reported in the U.S.  Thereafter, the virus quickly snowballed into a global pandemic.  On January 31, 2020, China's envoy to the United Nations attested that there had been more than 9,800 confirmed cases of the virus in China, with twenty-

three deaths.  News reports that day indicated that the virus had spread to at least eighteen other countries.

5.      Starting in January 2020, as the situation in China escalated, cruise companies, including Royal Caribbean, cancelled voyages in that region.  Customer bookings were also declining in regions outside China as vacationers were worried about the global spread of the virus.  In early February 2020, despite this slowdown to Royal Caribbean's overall bookings, the Company assured investors that it was only experiencing a slowdown from bookings in China.  For example, on February 4, 2020, Royal Caribbean stated that they were "[not] seeing a big impact on overall bookings [outside China]."

6.      In the first quarter of 2020, hundreds of COVID-19 cases were reported on at least thirteen Royal Caribbean ships, which later resulted in multiple fatalities and wrongful death lawsuits against the Company.  Meanwhile, Royal Caribbean assured the investing public that its safety protocols were "aggressive" and would "ultimately contain the virus."  Despite these assurances, the Company's policies and procedures were grossly inadequate to control the spread of the virus and failed to protect the health of its passengers and crews.  The Company's disregard of reasonable safety measures exacerbated the spread of COVID-19 throughout the world.

7.      During the Class Period, Defendants made false and/or misleading statements and failed to disclose material adverse facts about the Company's decrease in bookings outside China, and its inadequate policies and procedures to prevent the spread of COVID-19 on its ships.  As a result of these misrepresentations, Defendants caused Royal Caribbean stock to trade at artificially high prices during the Class Period.

8.      As the scope of the impact COVID-19 had on the Company's overall bookings and the inability of Royal Caribbean to prevent the virus' spread on its ships was revealed through a

series of corrective disclosures, the price of Royal Caribbean stock declined significantly and reflected the true value of the Company's stock.

9.      On February 13, 2020, Royal Caribbean issued a press release stating that it had cancelled eighteen voyages in Southeast Asia due to recent travel restrictions.  The Company also warned that "[w]hile the early impact due to concerns about the coronavirus is mainly related to Asia, recent bookings for our broader business have also been softer."  Despite this warning, Defendants conditioned investors to believe that Royal Caribbean's overall financial performance had not been materially impacted by COVID-19 concerns.  Defendants also assured investors that it had implemented adequate measures to protect its guests and crew.  On this news, Royal Caribbean's stock price declined more than 3% over the following trading session.

10.      Then on February 25, 2020, the Company filed its 2019 Form 10-K, indicating that COVID-19 concerns were negatively impacting its overall business.  Specifically, the filing stated that "efforts by China and other countries . . . to contain the spread of the disease have adversely impacted our business, including a drop in demand for cruises."  The Company continued, stating: "These concerns and restrictions over the outbreak are impacting our bookings and are having, and are likely to continue to have, a material impact on our overall financial performance."  On this news, Royal Caribbean's stock price declined more than 14% over the following two trading sessions.

11.      On March 10, 2020, it was revealed that COVID-19 was severely impacting Royal Caribbean's 2020 customer booking and that its safety measures were completely inadequate to prevent the spread of the virus on its ships.  On that date, the Company withdrew its 2020 financial guidance, increased its revolving credit facility by $550 million, and announced that it would take

cost-cutting actions due to the proliferation of COVID-19.  On this news, Royal Caribbean's stock price declined more than 14% over the next trading session.

12.     On March 11, 2020, Carnival Corporation ("Carnival"), the Company's largest competitor, announced a 60-day suspension of all operations, prompting concern that Royal Caribbean would follow suit.  The Company also cancelled two cruises, beginning a series of cancellations and suspensions to follow.  On this news, Royal Caribbean's stock price declined almost 32% over the next trading session.

13.     Then on March 13, 2020, the Company announced a suspension of all U.S. cruises for thirty days.  The next day, on March 14, 2020, Royal Caribbean announced that it would suspend global operations for thirty days.  Nevertheless, the Company failed to disclose that resumption of operation in thirty days was unrealistic and impossible given Royal Caribbean's inability to control the virus on its ships.  On this news, Royal Caribbean's stock price declined more than 7% over the next trading session.

14.     On March 16, 2020, the Company revealed that its global operations could be suspended longer than anticipated, announcing the cancellations of two additional cruises throughout April and into May.  On this news, Royal Caribbean's stock price declined more than 7% over the following trading session.

15.     Finally, the financial impact of the Company's false and misleading statements and/or omissions was revealed as analysts downgraded Royal Caribbean's stock and slashed their price targets.  For example, on March 18, 2020, before trading opened, Stifel Nicolaus ("Stifel") cut its one-year price target on Royal Caribbean from $161 to $40.  On this news, Royal Caribbean's stock price declined more than 19% over the following trading session.

16.     Shortly after the Class Period, lawsuits were filed against Royal Caribbean that exposed the Company's inadequate execution of safety protocols.  Two lawsuits were filed in connection with the Company's inability to protect its crews, one lawsuit by the family of a crew member who died after contracting COVID-19 and another lawsuit was filed on behalf of more than a thousand crew members working on the Company's *Celebrity Cruises* line.  These lawsuits alleged, among other things, that Royal Caribbean refused to allow crew members to wear masks, allowed crews to hold parties with long buffet lines, and required joint participation in drills even after operations ceased.

17.     As a result of Defendants' wrongful acts and misleading statements, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

20.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claim occurred in this District and many of the false and misleading statements alleged herein were disseminated in this District.

21.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

22.    Plaintiff, as set forth in the attached Certification, acquired Royal Caribbean securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

23.    Defendant Royal Caribbean is headquartered in Miami, Florida, and is incorporated in the Republic of Liberia.  The Company's common stock is traded on the New York Stock Exchange in the U.S., an efficient market, under the ticker symbol "RCL."

24.    Defendant Richard Fain ("Fain") was at all relevant times Royal Caribbean's Chairman and Chief Executive Officer ("CEO").

25.    Defendant Jason Liberty ("Liberty") was at all relevant times Royal Caribbean's Executive Vice President and Chief Financial Officer ("CFO").  Liberty is responsible for overseeing the company's Treasury, Accounting, Corporate, Strategic and Revenue Planning, Corporate Development, Information Technology, Supply Chain, Risk Management, Legal, Port Operations, Deployment, Internal Audit and Investor Relations.

26.    Defendant Michael Bayley ("Bayley") was at all relevant times Royal Caribbean International's President and CEO.

27.    Defendants Fain, Liberty, and Bayley are sometimes referred to herein as the "Individual Defendants."  Royal Caribbean and the Individual Defendants are collectively referred to herein as "Defendants."

28.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of, *inter alia*, Royal Caribbean's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and

institutional investors, *i.e.*, the market.  They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions with the Company and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false and misleading statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

29.     Royal Caribbean was founded in 1968 as a partnership.  Its corporate structure has evolved over the years, and it was incorporated on July 23, 1985, in the Republic of Liberia, under the Business Corporation Act of Liberia.  The Company is headquartered in Miami, Florida, and it has offices and a network of international representatives around the world, which primarily focus on sales and market development.  It is currently the second largest cruise line company in the world behind Carnival.

30.     In December 2019, the first case of COVID-19 was reported in China.  On January 20, 2020, the WHO and media outlets reported that confirmed cases of COVID-19 were discovered outside of mainland China—in Japan, South Korea, and Thailand, raising concerns about the speed of the virus's spread across borders.  On January 21, 2020, the first case was reported in the U.S. Thereafter, the virus exponentially spread around the world, creating a major health risk for Royal Caribbean and other companies within the cruise industry.  On January 31, 2020, China's envoy to the United Nations attested that there had been more than 9,800 confirmed cases of the virus in China, with 213 deaths.  News reports that day revealed that the virus had spread to at least eighteen

other countries, confirming earlier concerns over the virus's global spread.  Regardless of this news, Royal Caribbean continued to operate its cruises as usual, to all regions except quarantined regions such as China and southeast Asia.

31.     Unsurprisingly, the risk COVID-19 posed began to seep into the cruise industry in January 2020.  For example, on January 20, 2020, a passenger on Carnival's *Diamond Princess* ship tested positive for the virus, requiring passengers aboard the ship to quarantine while the ship was sailing near Hong Kong.  Ultimately, *712 Diamond Princess* passengers tested positive for the virus, resulting in nine deaths.[1]

32.     Vacationers around the world were justifiably concerned with boarding cruise ships in late January and early February, leading to a decrease in global bookings.  Despite being a historically strong season for bookings in the industry, Carnival admitted that, for the seven week period beginning January 26, 2020, "booking volumes for the remainder of 2020 were meaningfully behind the prior year on a comparable basis as a result of the effects of COVID-19."[2]  Similarly, another of Royal Caribbean's largest competitors, Norwegian Cruise Line ("Norwegian"), admitted on or around February 20, 2020, that Norwegian was no longer seeing a "week-over-week acceleration in the declines in bookings and increases in cancellations" in the last five days "compared to the prior three weeks."[3]  Importantly, both companies noted that bookings were down across all markets, not just China.  Industry analysts also observed similar decreases.

---

[1] Leah F. Moriarty, *Public Health Responses to COVID-19 Outbreaks on Cruise Ships*, Centers for Disease Control and Prevention (Mar. 27, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e3.htm.
[2] Carnival Corp., Current Report (Form 8-K) (Mar. 19, 2020).
[3] *NCLH Sees 'Meaningful Decrease in Bookings'*, Cruise Industry News (Feb. 20, 2020), https://www.cruiseindustrynews.com/cruise-news/22485-nclh-sees-meaningful-decrease-in-bookings.html.

33.     Despite the industry reporting significant declines in bookings, Royal Caribbean assured investors in early February 2020 that there was little to worry about the impact of COVID-19 on its markets outside Asia.  Specifically, Royal Caribbean touted that there was robust demand for cruises in the American and European markets with no sign of a slowdown.

34.     As a significant amount of vacationers avoided cruises, those who boarded ships experienced grossly inadequate safety procedures which the Company purported would "ultimately contain the virus."  Between February and March 2020, Royal Caribbean was responsible for spreading hundreds of COVID-19 cases and multiple deaths because of the insufficient safety measures that the Company had assured investors were "aggressive."

35.     For example, on February 7, 2020, Royal Caribbean's *Anthem of the Seas* ship docked in New Jersey and immediately brought four symptomatic passengers to be tested for the virus.  Regardless, the Company sent workers aboard to disinfect the ship without masks or other protective equipment.  In the days prior to the ship docking, passengers reported that they were not even aware of the possible illnesses, as the ship continued activities as usual.  All passengers were simply sent home after docking, irrespective of the test results.

36.     Three crew members who contracted COVID-19 on the Company's *Symphony of the Seas* ship in early March 2020 had died by mid-April 2020.  One crew member's family filed a wrongful death lawsuit against Royal Caribbean in Florida state court, alleging that Royal Caribbean failed to follow basic safety measures on the ship.

37.     Royal Caribbean also left their employees stranded on contaminated ships after they disembarked their passengers.  One instance of this occurred on or around March 15, 2020, on Royal Caribbean's *Oasis of the Seas*.  Crew members on the ship reported that they were encouraged to socialize without any social distancing or protective masks or gloves.  They also

reported that the captain of the ship repeatedly told crew members that the "ship [was] very healthy" and that "we don't have any cases on board."  Nearly two weeks later, the captain announced that fourteen crew members on the ship tested positive for COVID-19 and ordered employees to self-quarantine.  At least nine people were hospitalized from the incident, resulting in at least one death.

38.     Royal Caribbean's *Celebrity Apex* in France was no exception to lax safety standards.  On that ship, a crew member reported that her supervisors refused to allow the crew to wear masks or step up sanitation measures on board the ship, despite rising numbers of cases across France.  The crew member testified that "[the crew] didn't get proper information" and that supervisors dismissed rumors that contractors coming off the ship tested positive for the virus.  On March 25, 2020, more than 200 crew members tested positive for the virus.  One of these crew members filed a class action lawsuit alleging that the Company failed to observe social distancing measures, failed to provide masks, and even held a party that featured long buffet lines.

39.     Despite Royal Caribbean's lax safety policies and procedures, the Company continually conditioned investors to believe that they were executing on measures to contain the spread of COVID-19.

### Materially False and Misleading Statements Issued During the Class Period

40.     The Class Period begins on February 4, 2020, when Royal Caribbean issued a press release with 2019 financial results, 2020 earnings guidance, and COVID-19 updates.  The Company held an earnings call with investors on the same day.  The press release read: "The company is **very encouraged about the demand environment for 2020. Wave Season[4] has**

---

[4] Wave Season is considered the "Black Friday" of the cruise industry, as it is a period from January to March where cruise companies offer discounted rates and deals to incentivize customers to book cruises early for the year.  Given that cruise companies expect a heavy booking volume during this period, it can be used as an indicator for customer demand for the upcoming year.

started on a strong note with overall rates higher than same time last year and booked load factors ahead of same time last year on a like-for-like basis."[5]  During the conference call with investors later that day, the Company's CEO, Defendant Fain, discussed the impact of COVID-19, stating: "[o]ne important bright spot is that looking beyond the current outbreak **we aren't seeing a big impact on overall bookings elsewhere.**"[6]

41.    Royal Caribbean's CFO, Defendant Liberty, further assured investors that the demand environment was strong and "over the last three months **bookings have been consistently outpacing same time last year and Wave is off to an excellent start with 2020 booking trends ahead** for each of our four brands."  He went on to say that "[i]n fact the **second full week of January was a record booking week** for the company."

42.    During the call, Royal Caribbean's executives explained that the positive trend in booking came from North America and Europe, where the pandemic was not yet concentrated. Despite significant concerns over COVID-19, Defendant Liberty touted "ongoing strength in demand from North America for at least two years and I'm happy to say that **there are no signs of a slowdown.**"  Defendant Liberty represented that this purported "strength in demand" was "also benefiting itineraries in Europe."  He also confirmed that, in Europe, "[b]ookings were similar to the same time last year over the past three months and had **been up nicely during Wave.**"

---

[5] *Royal Caribbean Reports Record 2019 Results*, Royal Caribbean Group (Feb. 4, 2020), https://www.rclinvestor.com/press-releases/release/?id=1456
[6] *See* Royal Caribbean Cruises Ltd. CEO Richard Fain on Q4 2019 Results – Earnings Call Transcript (Feb. 4, 2019), https://seekingalpha.com/article/4321303-royal-caribbean-cruises-ltd-rcl-ceo-richard-fain-on-q4-2019-results-earnings-call-transcript.

43.     In response to these statements about "non-China booking[s]," an analyst asked if the Company could "elaborate . . . on that in terms of what [they] have seen with bookings or cancellations in the last week."   Defendant Bayley, CEO of Royal Caribbean International, responded: "we're kind of **pleased with what we're seeing in all of our markets around the world** with of course the exception of what's occurring in China."   Despite consumer worries about COVID-19, Bayley assured investors that they had received little concern over the virus from trade partners and customers and that "**any issue related to the virus is relatively small.**"

44.     Defendant Liberty added:

"Our commentary or my commentary around the booking environment is really what we're seeing to date. So when we think about being in a strong reposition, load factor position, our commentary or strength around North America's demand for North American products and European products, on **the positive commentary about Europe is all kind of incorporating what we've been seeing.** If you actually look at our 2020 bookings **since our last call our booking activity is up 6% versus a person at that point in time.** So if you take out the Coronavirus just for a moment what you're seeing is really kind of **continued strength in demand** for our brand and for our products."

45.     In addition to the misstatements about customer bookings during the earnings call on February 4, 2020, Defendants misled investors regarding the Company's safety protocols and exposure to the virus.   For example, Defendant Fain stated: "[i]n conjunction with CLIA, our industry trade group, **we have initiated strong safeguards to help contain the spread** of the disease and to protect our guests and crew."   He assured investors that "[a]ll these steps that we're taking and others are taking are **expected to ultimately contain the virus**, but we don't know how long that will take."   Downplaying the risk of the virus to the business, especially one as serious as COVID-19, Defendant Bayley stated that the Company is "taking a series of what we believe to be v**ery prudent and sensible actions** that will not entirely eliminate the risk but **massively minimize this risk.**"

46.     On or around February 7, 2020, four passengers disembarking from one of the Company's cruise ships in New Jersey displayed COVID-19 symptoms and were subsequently tested.  In response, the Company stated: "we are closely monitoring developments regarding coronavirus and **have rigorous medical protocols in place** onboard our ships."[7]  Further, the Company assured that "[i]n alignment with new stricter CDC protocols, **we are tightening our measures to protect guests and crew.**  These steps are **intentionally conservative.**"[8]

47.     The statements referenced in ¶¶ 40-46 were materially false and/or misleading statements and failed to disclose material adverse facts about the Company's decrease in bookings outside China and its inadequate policies and procedures to prevent the spread of COVID-19 on its ships.  Specifically, regarding global bookings, Royal Caribbean made statements that: (1) misled investors to believe that any issue related to COVID-19 was relatively insignificant; (2) falsely assured investors that bookings outside China were strong with no signs of a slowdown; and (3) failed to disclose that the Company was experiencing material declines in bookings globally because of customer concerns over COVID-19.   Additionally, regarding safety procedures, the Company made statements that: (1) falsely assured investors that it implemented rigorous safety protocols; (2) such protocols were expected to ultimately contain the spread of the virus; and (3) failed to disclose that its ships were following grossly inadequate protocols that would foster the spread of COVID-19 and pose a substantial risk to passengers and crews.

---

[7] *Coronavirus concern: 4 passengers from New Jersey cruise ship being evaluated; all others cleared*, ABC 7 (Feb. 7, 2020), https://abc7chicago.com/coronavirus-coronoavirus-fear-cruise-ship-anthem-of-the-seas/5910452/
[8] Elisha Fieldstadt, *Coronavirus leads Royal Caribbean to bar Chinese, Hong Kong, and Macau passport holders*, NBC News (Feb. 7, 2020, 8:04 AM), https://www.nbcnews.com/health/health-news/royal-caribbean-cruise-passengers-n-j-screened-coronavirus-4-taken-n1132266

**The Truth Begins to Emerge**

48.     On February 13, 2020, Royal Caribbean issued a press release, revealing that COVID-19 was having an impact on the Company's overall bookings.  The Company stated that, "[w]hile the early impact due to concerns about the coronavirus is mainly related to Asia, recent bookings for our broader business have also been softer."  The Company also stated that it had cancelled eighteen cruises in Southeast Asia because of recent travel restrictions.  These actions caused Royal Caribbean to increase the expected 2020 earnings impact of COVID-19 from $0.25 to $0.65 per share.  At the same time, Defendants conditioned investors to believe that its overall performance had not yet been impacted by COVID-19 concerns, stating: "[i]f the travel restrictions and concerns over the outbreak continue for an extended period of time, they **could** materially impact the company's **overall** financial performance."  Royal Caribbean also continued to downplay the virus and misrepresent the adequacy of its health policies, as Defendant Fain stated: "[i]t is important that every organization acts responsibly, and **we have already taken aggressive steps** to minimize risk through boarding restrictions and itinerary changes."  He concluded, stating that Royal Caribbean's "**focus on public health is unwavering.**"[9]

49.     On this news, Royal Caribbean's stock price fell $3.61 per share, or 3.08%, to close at $113.62 per share on February 13, 2020.

50.     On February 25, 2020, the Company filed its 2019 Form 10-K, which reported that COVID-19 negatively impacted its global bookings by more than previously represented.  The report indicated that "measures taken by China **and other countries**" to control COVID-19, as well as "**concerns** and restrictions over the outbreak **are impacting our bookings** and are having, and are likely to continue to have, a material impact on our **overall** financial performance."  The

---

[9] *Royal Caribbean Comments on Coronavirus February 13th 2020*, Royal Caribbean Group (Feb. 13, 2020), https://www.rclinvestor.com/press-releases/release/?id=1458

expected impact of the virus was also increased to $0.90 per share.  Nonetheless, Defendants continued to boast about their safety policies and downplay the risks to the Company by failing to disclose the Company's inadequate procedures to combat the spread of COVID-19 and assuring that the Company's emphasis was on "[p]rotect[ing] the health, safety and security of our guests and employees."[10]

51.     On this news, Royal Caribbean's stock price fell $12.55 per share, or 14.01%, over the following two trading sessions to close at $77.00 per share on February 27, 2020.

52.     On March 10, 2020, Royal Caribbean withdrew its 2020 financial guidance, increased its revolving-credit facility by $550 million, and said it would take certain cost-cutting actions because of the proliferation of COVID-19.  However, Royal Caribbean continued to conceal the fact that it could not protect guests and crew and the Company was at a heightened risk of ultimately having to cease all operations, while stating that it "[is] taking these [extraordinary] steps to manage the company **prudently and conservatively.**"  Defendant Fain personally endorsed the Company's actions, stating that he was "proud of the work [his] teams are doing to address this unprecedented situation."

53.     On this news, Royal Caribbean's stock price fell $7.30 per share, or 14.13%, to close at $44.37 per share on March 11, 2020.

54.     Then, on March 11, 2020, Carnival announced a 60-day suspension of all its operations, prompting concern that Royal Caribbean's safety procedures were not as "aggressive" as they previously led on and that the Company too would soon follow suit.  On the same day, Royal Caribbean cancelled two cruises, stating: "[d]ue to developments related to coronavirus (COVID-19) . . . we have made the decision to cancel our March 16th sailing for *Jewel of the Seas*,

---

[10] Royal Caribbean Cruises Ltd., Annual Report (Form 10-K) (Feb. 25, 2020).

as well as all April sailings for *Quantum of the Seas*."  Still, however, the Company's *Azamara* cruise line attempted to incentivize bookings on the same day by offering a new travel insurance program while assuring that "the safety and health of our guests is our top priority, therefore we're making it easy for them to plan now, or in the future."

55.     On this news, Royal Caribbean's stock price fell $14.10 per share, or 31.78%, to close at $30.27 per share on March 12, 2020.

56.     On March 13, 2020, the Company announced further cancellations.  On that day, Royal Caribbean "announced that it is suspending cruising in the United States **for 30 days.**" Then, on March 14, 2020, the Company announced via press release that it was required to broaden its prior cancellations, stating that "[g]iven global public health circumstances, Royal Caribbean Cruises Ltd. has decided to suspend the sailings of our fleet globally."  However, the Company failed to disclose that a 30-day suspension was unrealistic and impossible given Royal Caribbean's inability to control the virus on its ships, stating that "as with our announcement yesterday regarding U.S. sailings, we expect to return to service on April 11, 2020."

57.     On this news, Royal Caribbean's stock price fell $2.39 per share, or 7.39%, to close at $29.94 per share on March 16, 2020.

58.     Then, on March 16, 2020, Royal Caribbean announced that the spread of COVID-19 had forced the Company to suspend additional cruises, extending beyond April 11, 2020.  The Company announced: "[w]hile our goal is to resume general operations on April 11, some regions have closed their ports to cruise ship travel. As a result, we must unfortunately cancel our Jewel of the Seas, April 19-May 3 sailings, and Spectrum of the Seas, April 2020 sailings."

59.     On this news, Royal Caribbean's stock price fell $2.28 per share, or 7.62%, to close at $27.66 per share on March 17, 2020.

60.     Finally, the full impact of Royal Caribbean's false and misleading statements and/or omissions was revealed, as analysts downgraded the Company's stock and slashed their price targets, reflecting the true value of Royal Caribbean stock.  On March 18, 2020, prior to the opening of the stock market, Stifel cut its one-year price target on Royal Caribbean from $161 to $40.

61.     On this news, Royal Caribbean's stock price fell $5.33 per share, or 19.27%, to close at $22.33 per share on March 18, 2020.

### Post-Class Period Developments

62.     The inadequacy of Royal Caribbean's safety procedures came out, in part, from a series of lawsuits filed against the Company after the Class Period.  On April 14, 2020, over a thousand crew members employed by the Company filed a class action lawsuit alleging that the Company "glaringly failed" to protect its crew members, leading to hundreds of COVID-19 cases. Specifically, the complaint alleges that the Company allowed parties, mandated participation in drills, and failed to timely quarantine crew members.  The complaint further asserts that the Company did not provide crew members with masks or observe social distancing.

63.     On May 5, 2020, the family of a crew member who died after contracting the disease on the Company's *Symphony of the Seas* ship filed a wrongful death lawsuit against the Company.  The lawsuit alleges, among other things, that the Company failed to follow bare minimum safety protocols on its ships such as social distancing and providing masks and gloves for crew members.  Additionally, the Company allowed the crew to hold parties and required participation in drills, even after the Company ceased all operations.  The lawsuit further alleges that the Company unreasonably delayed bringing the crew member ashore to a hospital, leaving him stranded on the ship while relying on additional oxygen.

## **UNDISCLOSED ADVERSE FACTS**

64.     At all relevant times, the market for Royal Caribbean securities was open, well-developed, and efficient.   As a result of Defendants' false and misleading statements and omissions, Royal Caribbean securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of the Company's securities and market information relating to Royal Caribbean, and have been damaged thereby.

65.     During the Class Period, Defendants materially misled the investing public, thereby purposely inflating the price of Royal Caribbean's securities by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.   These statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Royal Caribbean's business, operations, prospects, and risks as alleged herein.

66.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause, of the damages sustained by Plaintiff and other members of the Class.   As described herein, during the Class Period, Defendants made, or caused to be made, a series of materially false and/or misleading statements about Royal Caribbean's global bookings and safety protocols relating to the proliferation of COVID-19.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements

during the Class Period resulted in Plaintiff and other members of the Class transacting in the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

67.     During the Class Period, as alleged herein, the Defendants acted with scienter in that the Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

68.     The Defendants permitted Royal Caribbean to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

69.     As set forth herein, the Defendants, by virtue of their knowledge reflecting the true impact COVID-19 was having on their business, their control over, receipt, and/or modification of Royal Caribbean's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning the Company's bookings and safety protocols, participated in the fraudulent scheme alleged herein.

70.     The Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on those who purchased or otherwise acquired Royal Caribbean securities by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme deceived the investing public regarding Royal Caribbean's business, operations, risks, and the intrinsic value of Royal Caribbean securities and

caused Plaintiff and members of the Class to transact in Royal Caribbean securities at artificially inflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

71.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Royal Caribbean securities, and operated as a fraud or deceit on Class Period purchasers of Royal Caribbean securities by misrepresenting the Company's business and exposure to COVID-19.  Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of Royal Caribbean's securities declined as the prior artificial inflation came out of the price over time.  As a result of their purchases of Royal Caribbean securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e*., damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

72.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's securities traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)     Plaintiff and other members of the Class purchased or otherwise acquired Royal Caribbean securities between the time Defendants misrepresented or failed to disclose

material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

73.     At all relevant times, the markets for Royal Caribbean securities were efficient for the following reasons, among others:

(a)     Royal Caribbean filed periodic public reports with the SEC;

(b)     Royal Caribbean regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)     Royal Caribbean was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)     Royal Caribbean securities were actively traded in an efficient market.

74.     As a result of the foregoing, the market for Royal Caribbean securities promptly digested current information regarding Royal Caribbean from publicly available sources and reflected such information in Royal Caribbean's share price.  Under these circumstances, all those who purchased or otherwise acquired Royal Caribbean securities during the Class Period suffered similar injury through their purchase of Royal Caribbean securities at artificially inflated prices, and the presumption of reliance applies.

75.     Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

<u>**NO SAFE HARBOR**</u>

76.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Royal Caribbean who knew that the statement was false when made.

<u>**PLAINTIFF'S CLASS ACTION ALLEGATIONS**</u>

77.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that purchased or otherwise acquired Royal Caribbean securities during the Class Period.  Excluded from the Class are: Defendants; the officers and directors of the Company during the Class Period (the "Excluded D&Os"); members of Defendants' and the Excluded D&Os' immediate families; the subsidiaries and affiliates of the Company, including the Company's employee retirement and benefit plan(s) and their participants

or beneficiaries, to the extent they made purchases through such plan(s); and any entity in which Defendants or the Excluded D&Os have or had a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded person or entity.

78.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

79.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)     Whether the Exchange Act was violated by Defendants;

(b)     Whether Defendants omitted and/or misrepresented material facts;

(c)     Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     Whether the price of Royal Caribbean securities was artificially inflated; and

(f)     The extent of damage sustained by Class members and the appropriate measure of damages.

80.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

81.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in securities class action litigation.  Plaintiff has no interests that conflict with those of the Class.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

83.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

85.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

(a)     Employed devices, schemes, and artifices to defraud;

(b)     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Royal Caribbean securities during the Class Period.

86.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Royal Caribbean securities.  Plaintiff and the Class would not have purchased Royal Caribbean securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

87.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Royal Caribbean securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

88.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.     The Individual Defendants acted as controlling persons of Royal Caribbean within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control public statements about Royal Caribbean, the Individual Defendants had the power and ability to control the actions of Royal Caribbean and its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  October 27, 2020                    Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

/s/Jayne A. Goldstein
Jayne A. Goldstein
1625 N. Commerce Parkway, Suite 320
Fort Lauderdale, FL  33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jgoldstein@sfmslaw.com

**POMERANTZ LLP**
James M. LoPiano
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jlopiano@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484

Facsimile: (212) 697-7296
peretz@bgandg.com

***Attorneys for Plaintiff***